IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
EASTERN DIVISION
No. 4:12-CV-86-D

| | | |
|---|---|---|
| DEBRA ROSE MCMURRAY, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | **ORDER** |
| | ) | |
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Defendant. | ) | |

On May 7, 2012, Debra McMurray ("McMurray" or "plaintiff") filed suit against the United States of America ("United States" or "defendant") pursuant to the Federal Tort Claims Act ("FTCA"), 28 U.S.C. §§ 2671–2680 [D.E. 1]. McMurray was riding in a car driven by a United States Marine acting within the scope of his employment. Id. The car was in an accident while returning from a Marine Corps seminar and McMurray was injured. Id. McMurray alleges that the Marine drove negligently and seeks damages. Id. On July 9, 2012, the United States moved for summary judgment and filed a memorandum and exhibit in support [D.E. 8–9]. McMurray responded in opposition [D.E. 10], and the United States replied [D.E. 12]. As explained below, the dispute focuses on the enforceability of a release that McMurray signed before the accident. The release states that McMurray waived any right to sue the United States arising from the United States's negligence, including during transportation to and from the seminar. Because the release is enforceable and bars her claim, the court grants defendant's motion for summary judgment.

I.

McMurray is a resident of Moore County, North Carolina, who worked as a guidance counselor at South View High School in Cumberland County, North Carolina. Compl. ¶¶ 4, 12.

Among other duties, McMurray helped students identify and select post-graduation opportunities, including military service. Id. ¶ 13. McMurray learned that the United States Marine Corps hosted an Educators' Workshop ("the seminar") at its Recruit Depot in Parris Island, South Carolina, from March 29 to April 2, 2010. Id. ¶¶ 16–17. McMurray believed that the seminar would provide her insight while advising students interested in military service. See id. In addition, attending the seminar satisfied continuing education requirements for McMurray. Pl.'s Aff. [D.E. 10-1] ¶ 3.

Before attending the seminar, McMurray executed a Release and Hold Harmless Agreement ("Release"). Pl.'s Resp. 4. The Release provided, in part, that McMurray waived any right to sue arising from the United States's negligence, including during transportation to and from the seminar [D.E. 9-1]. McMurray initialed each paragraph of the Release. Id. McMurray was told that she was required to sign the Release to participate in the seminar. Pl.'s Aff. ¶ 5.

The seminar attendees rode together to and from Parris Island on a bus that departed from Raleigh, North Carolina. Compl. ¶ 17. McMurray traveled from her home in Moore County to Raleigh in order to ride the bus. McMurray wanted to drive herself between her home and Raleigh but was told that she must ride with a Marine recruiter in order to participate. Pl.'s Aff. ¶ 6.

On April 2, 2010, the attendees returned to Raleigh from Parris Island. Michael Rumfalo, a United States Marine, was responsible for driving McMurray from Raleigh to her home in Moore County. Compl. ¶¶ 5, 18. On the way, McMurray alleges that Rumfalo negligently ran a red light in Raleigh, causing an accident in which McMurray sustained injuries. Id. ¶¶ 25–27. McMurray properly exhausted administrative remedies before filing suit. See id. ¶¶ 7–11. The United States seeks summary judgment based on the Release.

II.

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as

2

to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); see, e.g., Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247–48 (1986). The party seeking summary judgment bears the initial burden of demonstrating the absence of a genuine issue of material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 325 (1986). Once the moving party has met its burden, the nonmoving party may not rest on allegations or denials in its pleading, Anderson, 477 U.S. at 248–49, but "must come forward with specific facts showing that there is a genuine issue for trial." Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986) (emphasis removed) (quotation omitted). A defendant may establish an affirmative defense and prevail on its motion for summary judgment when it has produced admissible evidence that would entitle it to judgment as a matter of law if not contradicted at trial. See Ray Commc'ns, Inc. v. Clear Channel Commc'ns, Inc., 673 F.3d 294, 299 (4th Cir. 2012). When a defendant has produced sufficient evidence in support of its affirmative defense, the burden of production shifts to the plaintiff to "come forward with specific facts showing that there is a genuine issue for trial." Id.; see Brinkley v. Harbour Recreation Club, 180 F.3d 598, 614 (4th Cir. 1999), overruled on other grounds by Desert Palace, Inc. v. Costa, 539 U.S. 90 (2003). The court must view the facts in the light most favorable to the non-movant and draw all reasonable inferences in the non-movant's favor. Scott v. Harris, 550 U.S. 372, 378 (2007); Anderson, 477 U.S. at 255.

In FTCA actions, federal courts apply the substantive law of the state in which the act or omission giving rise to the claim occurred. Iodice v. United States, 289 F.3d 270, 274 (4th Cir. 2002); see FDIC v. Meyer, 510 U.S. 471, 478 (1994). Accordingly, North Carolina law governs. In analyzing North Carolina law where the Supreme Court of North Carolina "has spoken neither directly nor indirectly on the particular issue," this court must anticipate how the Supreme Court of North Carolina would rule. Ellis v. La.-Pac. Corp., 699 F.3d 778, 782–83 (4th Cir. 2012). "In

3

making that prediction, [the court] may consider lower court opinions in North Carolina, the teachings of treatises, and the practices in other states." Id. (alteration omitted); see Twin City Fire Ins. Co. v. Ben Arnold-Sunbelt Beverage Co. of S.C., 433 F.3d 365, 369 (4th Cir. 2005).

As a general rule, North Carolina enforces exculpatory waivers under the principle of freedom of contract. Tatham v. Hoke, 469 F. Supp. 914, 917 (W.D.N.C. 1979); Hall v. Sinclair Ref. Co., 242 N.C. 707, 709–10, 89 S.E.2d 396, 397–98 (1955); Miller's Mut. Fire Ins. Ass'n v. Parker, 234 N.C. 20, 22, 65 S.E.2d 341, 342 (1951). In other words, "contracting parties may, with a few exceptions, agree to limitations on liability for ordinary negligence." Tatham, 469 F. Supp. at 917. However, such contracts are disfavored and are strictly construed against the party asserting the waiver. Winkler v. Appalachian Amusement Co., 238 N.C. 589, 596, 79 S.E.2d 185, 190 (1953). Waivers will not be enforced when they (1) violate a North Carolina statute, (2) are gained through an inequality of bargaining power, or (3) contradict a substantial public interest. Waggoner v. Nags Head Water Sports, Inc., 141 F.3d 1162, 1998 WL 163811, at *7 (4th Cir. Apr. 6, 1998) (unpublished table opinion); Fortson v. McClellan, 131 N.C. App. 635, 636, 508 S.E.2d 549, 551 (1998).

McMurray argues that the court should not enforce the Release, and that she has raised a genuine issue of material fact concerning whether the Release falls within the three exceptions to the general rule of enforcing such releases. The court examines each argument seriatim.

First, McMurray argues that enforcing the Release would violate North Carolina General Statute § 20-158(b)(2), which prohibits a driver from running a red light. Pl.'s Resp. 13–14. However, this statute merely deals with operating a motor vehicle. As the Fourth Circuit explained in Waggoner, in order for the statutory exception to apply, the statute must (at a minimum) mandate a specific standard of care for a waiver to violate the statute. See Waggoner, 1998 WL 163811, at

4

*7 (holding that the statutory exception does not apply even though the North Carolina Boating Safety Act "as a whole exhibits a policy towards promoting boating safety. This is a far cry from a prohibition of exculpatory clauses in [jet ski] recreational rental agreements."); cf. Strawbridge v. Sugar Mountain Resort, Inc., 320 F. Supp. 2d 425, 433 (W.D.N.C. 2004) (disallowing enforcement of a waiver when it conflicted with a statute imposing a specific duty on ski operators not "to engage willfully or negligently in any type of conduct that contributes to or causes injury to another person or his properties"). Unfortunately for McMurray, the statute that she cites does not provide a specific standard of care applicable to the facts of this case. In fact, the statute explicitly states that the failure to stop at a red light shall not be considered negligence per se. See N.C. Gen. Stat. § 20-158(d); Lewis v. Brunston, 78 N.C. App. 678, 682, 338 S.E.2d 595, 598–99 (1986). Accordingly, the Release does not violate this statute. See Waggoner, 1998 WL 163811, at *7.

Second, McMurray argues that the United States obtained the Release through unequal bargaining power. Pl.'s Resp. 15–18. Unequal bargaining power exists when a party must "accept what is offered or forego the advantages of the contractual relation in a situation where it is necessary for him to enter into the contract to obtain something of importance . . . which for all practical purposes is not obtainable elsewhere." Hall, 242 N.C. at 710, 89 S.E.2d at 398. McMurray contends that the seminar was an important and unique professional opportunity and that she had no power over the terms of her participation. Pl.'s Aff. ¶¶ 3–7.

Merely because the terms of McMurray's agreement with the United States were non-negotiable does not necessarily mean the Release involved an inequality of bargaining power. See, e.g., Waggoner, 1998 WL 163811, at *7. After all, McMurray retained the option to decline to participate in the seminar. See id.; Kelly v. United States, 809 F. Supp. 2d 429, 435 n.6 (E.D.N.C. 2011). Despite McMurray's contrary contention, any imbalance of power "is more apparent than

5

real." Gas House, Inc. v. S. Bell Tel. & Tel. Co., 289 N.C. 175, 184, 221 S.E.2d 499, 505 (1976), overruled on other grounds, State ex rel. Utilities Comm'n v. S. Bell Tel. & Tel. Co., 307 N.C. 541, 299 S.E.2d 763 (1983). Additionally, McMurray fails to raise a genuine issue of material fact concerning whether she could obtain the information provided in the seminar elsewhere. Although attending the seminar surely would add some knowledge about the Marine Corps, information about the Marine Corps is accessible elsewhere to high school guidance counselors. Cf. Waggoner, 1998 WL 163811, at *7 ("Only where it is necessary for the plaintiff to enter into the contract to obtain something of importance to him which for all practical purposes is not obtainable elsewhere will unequal bargaining power void an exculpatory clause.") (alteration and quotation omitted); Kelly, 809 F. Supp. 2d at 435 n.6. Furthermore, although the seminar was one way in which McMurray could obtain continuing education credit, alternative options were available. Cf. Miller's Mut., 234 N.C. at 24, 65 S.E.2d at 344 (finding a "marked" imbalance of bargaining power between an automobile owner and a public parking lot owner in a downtown location because people who work in cities "are driven to seek accommodation in some parking lot maintained for the service of the public"). Accordingly, the United States did not obtain the Release through unequal bargaining power.

Finally, McMurray argues that the Release contradicts a substantial public interest. Pl.'s Resp. 6–13. In North Carolina, "a party cannot protect himself by contract against liability for negligence in the performance of a duty of public service, or where a public duty is owed, or public interest is involved, or where public interest requires the performance of a private duty." Hall, 242 N.C. at 710, 89 S.E.2d at 398. The substantial public interest exception is "narrowly tailored" and only "applies to entities or industries that are heavily regulated." Bertotti v. Charlotte Motor Speedway, Inc., 893 F. Supp. 565, 569 (W.D.N.C. 1995); see Tatham, 469 F. Supp. at 918–19

6

(invalidating exculpatory clause in agreement between doctor and patient in light of extensive regulation of doctors and medical services); Fortson, 131 N.C. App. at 637–38, 508 S.E.2d at 551–52 (invalidating release signed concerning rider's participation in motorcycle safety training program); Alston v. Monk, 92 N.C. App. 59, 64, 373 S.E.2d 463, 466–67 (1988) (invalidating release signed concerning customer's receipt of cosmetology services, in light of extensive regulation of cosmetology industry and use of hazardous chemicals). Thus, in a variety of circumstances, courts applying North Carolina law have held that the substantial public interest exception does not apply. See Kelly, 809 F. Supp. 2d at 437–38 (refusing to invalidate liability waiver that parent signed in order to permit 15 year old to participate in Navy Junior Reserve Officer Training Corps activities); Bertotti, 893 F. Supp. at 569 (refusing to invalidate liability waiver concerning participation in amateur go kart racing); Andrews v. Fitzgerald, 823 F. Supp. 356, 378 (M.D.N.C. 1993) (refusing to invalidate exculpatory clauses in a confidential offering memorandum and partnership agreement involving sale of unregistered securities and acquisition of commercial real estate); Hall, 242 N.C. at 710–11, 89 S.E.2d at 398 (refusing to invalidate liability waiver in rental contract for installation of gas tank and pumping equipment).

McMurray contends that driving is a heavily regulated activity that poses a substantial risk to public safety. Pl.'s Resp. 6–7. She then argues that the chapter in North Carolina's statutes regulating motor vehicles is an expression of the state's public policy. Accordingly, McMurray argues that the Release falls within the substantial public interest exception and is invalid. See id. 6–13.

As noted, the court must predict how the Supreme Court of North Carolina would rule on this issue. See Ellis, 699 F.3d at 782–83; Twin City Fire Ins. Co., 433 F.3d. at 369. In doing so, this court may not create or expand North Carolina public policy. Time Warner Entm't-Advance/

7

Newhouse P'ship v. Carteret-Craven Elec. Membership Corp., 506 F.3d 304, 314–15 (4th Cir. 2007). Here, the court declines McMurray's invitation to convert the General Assembly's regulation of motor vehicles into a blanket invalidation of all driving-related waivers. Although North Carolina's General Statutes certainly regulate driving, the General Assembly regulates (to some degree) the subject matter of all legislation. The substantial public interest exception, however, requires more than the citation to a statute to apply. See Waggoner, 1998 WL 163811, at *7; cf. Garner v. Rentenbach Constructors, Inc., 350 N.C. 567, 571, 515 S.E.2d 438, 441 (1999) ("[S]omething more than a mere statutory violation is required to sustain a claim . . . under the public-policy exception."). Moreover, excluding common carriers, driving does not constitute an entity or industry that is heavily regulated for purposes of the substantial public interest exception. See Andrews, 823 F. Supp. at 378 (collecting cases); cf. Hill v. Carolina Freight Carriers Corp., 235 N.C. 705, 710, 71 S.E.2d 133, 137–38 (1952) (applying Georgia law and invalidating waiver involving a common carrier); Fortson, 131 N.C. App. at 637–38, 508 S.E.2d at 551–52 (applying North Carolina law and invalidating a waiver for a school performing motorcycle instruction, not operation). Here, even viewing the evidence in the light most favorable to McMurray, the Release does not contradict a substantial public interest.

In sum, North Carolina's adherence to freedom of contract provides the rule that governs this case. Moreover, having reviewed the briefs and the record, oral argument would not be helpful. Accordingly, McMurray's motion for oral argument is denied.

III.

As explained, the court GRANTS defendant's motion for summary judgment [D.E. 8] and DENIES plaintiff's motion for oral argument [D.E. 15]. The clerk shall close the case.

8

SO ORDERED. This 13 day of December 2012.

JAMES C. DEVER III
Chief United States District Judge